AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 6:22 cr 477
)
867 GILLIAM ROAD, )
GREER, SOUTH CAROLINA 29651 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

867 GILLIAM ROAD, GREER, SOUTH CAROLINA 29651 - "Target Location" (as more fully described in attachment A to the affidavit submitted in support of this application)

located in the _____ District of ___South Carolina___ , there is now concealed *(identify the person or describe the property to be seized)*:

The items described in Attachment B to the affidavit submitted in support of this application.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to PWID Controlled Substances |
| 21 USC 841 | PWID Controlled Substances |

The application is based on these facts:
see attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____Tonya G. Kelley_____
*Applicant's signature*

Tonya G. Kelley, Special Agent, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___Telephone___ *(specify reliable electronic means)*.

Date: 5/31/22

_____
*Judge's signature*

City and state: Greenville, South Carolina

Kevin F. McDonald, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH AND SEIZURE WARRANT AUTHORIZING THE SEARCH OF 867 GILLIAM ROAD, GREER, SOUTH CAROLINA 29651 | Case No. _____<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Tonya G. Kelley, Drug Enforcement Administration (DEA), being duly sworn, depose and state the following:

### AGENT BACKGROUND

1. I, Tonya G. Kelley, submit this affidavit in support of an application for a search warrant at 867 Gilliam Road, Greer, South Carolina 29651 (**TARGET LOCATION**). The **TARGET LOCATION** is a known residence of Larry MCCRARY and is further described in the following paragraphs and Attachment A to this Affidavit. I am requesting authorization to search the **TARGET LOCATION** in accordance with Attachment A, which would include a search of the residence on the **TARGET LOCATION** and any vehicles located at or on the **TARGET LOCATION**.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent with the DEA since January 2016. As part of your Affiant's law enforcement duties, Affiant is statutorily charged with investigating federal criminal violations, and has served as the case agent involving numerous investigations of federal violations including drug trafficking and related offenses. I have gained knowledge in the use of various

investigative techniques including the utilization of physical surveillance, undercover agents, confidential informants and cooperating witnesses, and investigative interviews. I am aware that drug traffickers commonly use cellular telephones in furtherance of their drug trafficking activities. I have obtained administrative and grand jury subpoenas, search warrants for electronic and physical evidence and orders for electronic interception of communications under Title III and have analyzed telephone caller identification system data, electronic evidence and information maintained by telephone and internet service providers involved with electronic data storage, including data from global positioning system ("GPS") devices on automobiles and GPS information for cellular telephones. Through my training, education, and experience, I have become familiar with the methods and manner in which drug traffickers conceal, transport, store, distribute illegal drugs and launder drug proceeds.

## INFORMATION SOURCES

3. I submit this affidavit based upon personal knowledge derived from my training, experience, and participation in this investigation; information that I have learned from discussions with other investigators; the review of written reports of investigations, arrests, and seizures; the review of reports of physical surveillance conducted by state and local officers or other federal agents; the review of telephone toll records; information from court-authorized intercepts; and debriefings of sources of information and other witnesses.

4. All statements set forth herein are stated in substance, unless otherwise indicated by quotation marks. I know that participants in criminal conspiracies often speak in code, which is subject to interpretation. So, wherever in this affidavit I state a belief, that belief

is my interpretation of what was said in the communication. This belief is based upon my training, experience, and knowledge of this investigation.

5. The facts related in this affidavit do not reflect the totality of information known to me or other officers, but the amount I believe is necessary to establish probable cause for the requested warrant. I do not rely upon facts not set forth herein in respectfully submitting that a warrant should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a search warrant.

## INTRODUCTION

6. This affidavit is submitted in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to search the location described in Attachment A for the things described in Attachment B. The warrant I am requesting authorizes the search of the premises located at 867 Gilliam Road, Greer, South Carolina 29651 (**TARGET LOCATION**), which is a residence known to be maintained by Larry MCCRARY.

7. The **TARGET LOCATION** is 867 Gilliam Road, Greer, South Carolina 29651, a single-family dwelling where agents believe Larry MCCRARY resides. Agents believe MCCRARY maintains this residence, and the facts included below establish that MCCRARY is unlawfully distributing controlled substances.

8. Based on the facts as set forth in this affidavit, I respectfully submit there is probable cause to believe that Larry MCCRARY is violating 21 U.S.C. § 841(a)(1) (possession with intent to distribute (PWID) a controlled substance) and 21 U.S.C. § 846 (conspiracy to PWID controlled substances). As set forth in greater detail below, I further submit there is probable cause to believe that a search of the **TARGET LOCATION** will yield evidence of these violations of federal law.

3

## BACKGROUND INVESTIGATION
## INCEPTION OF THE CASE

9. In September 2021, Tonny FREEMAN ("FREEMAN") was intercepted over wire communications discussing kilogram quantities of cocaine during a DEA Atlanta investigation. As part of DEA Atlanta's investigation, law enforcement seized approximately 20 kilograms of cocaine from a drug courier in the Atlanta area who was intercepted discussing drug transactions with FREEMAN on multiple occasions. DEA Greenville then began investigating FREEMAN and confirmed through source information and controlled purchases of heroin that FREEMAN was distributing cocaine and heroin in the District of South Carolina. Law enforcement has since utilized a multi-faceted approach to develop additional evidence of FREEMAN's drug distribution operation. These methods include, but are not limited to, physical surveillance, interviews with sources of information, and the employment of a confidential source. Additionally, law enforcement has obtained authorization and initiated the use of electronic surveillance tools such as cellphone geo-location data.

10. On April 5, 2022, the Honorable Henry M. Herlong, Jr., Senior United States District Judge for the District of South Carolina, signed an order authorizing agents to begin intercepting wire communications over 470-573-4665 (TT#1), used by FREEMAN. Subsequently, on May 4, 2022, Judge Herlong signed an order authorizing agents to continue intercepting wire communications over TT#1. During the intercepts occurring over TT#1, agents have intercepted Larry MCCRARY talking to FREEMAN about purchasing cocaine from him.

11. During the investigation, agents have determined that many individuals hold specific roles within the drug distribution network. One of these individuals is Larry MCCRARY. Agents have learned that FREEMAN leads a cocaine, heroin, and marijuana distribution operation

4

based in the Greer, South Carolina. MCCRARY has been identified as a cocaine customer of FREEMAN. MCCRARY currently has outstanding felony arrest warrants in Spartanburg County, South Carolina, for state drug-related charges. In 2006, MCCARY was convicted of trafficking cocaine (between 28 and 100 grams).

**PROBABLE CAUSE**

12. On April 25, 2022, agents intercepted a conversation between FREEMAN, using TT#1, and an unidentified female (UF14), using 404-992-1217. A relevant portion of the call went as follows:

> FREEMAN: "You know, uh, he called me today."
>
> UF14: "Who did?"
>
> FREEMAN: "Butch."
>
> UF14: "Did he?"
>
> FREEMAN: "Yeah, he called me – said, uh, he said, 'Ay man it's so dry.' He said, 'Hey man, I need to get one of them things.' He said, 'It's so dry. Like you know – hey man.'"
>
> UF14: "Do you even trust him?"
>
> FREEMAN: "Huh?"
>
> UF14: "You trust him?"
>
> FREEMAN: "I can't understand what you saying."
>
> UF14: "Do you trust him?"
>
> FREEMAN: "Yeah, I mean, he, he, he just can't get none now. I know what his fucking problem is."
>
> UF14: "Oh, he's back to you."

5

FREEMAN: "He can't find no motherfucker like me. That is always, always. You know?"

UF14: "Mmmhmm."

FREEMAN: "You'll find a motherfucker that might have it today and ain't got it tomorrow."

UF14: "Mmmhmm."

FREEMAN: "But I, base my income on my life – my livelihood – on being, on having the money – just like a grocery store. I stock the grocery store up so I can't fuck my money up. All the money is tied up in the grocery store. You understand what I'm saying?"

13. Based on my training, experience, and the investigation to date, I believe FREEMAN told UF14 that a previous drug customer of his, believed to be MCCRARY, had contacted him ("You know, uh, he called me today."). FREEMAN said that MCCARY, a/k/a "Butch," told FREEMAN he was not able to obtain drugs from his regular drug supplier ("it's so dry") and requested drugs from FREEMAN ("He said, 'Hey man, I need to get one of them things.'"). Based on previous investigations involving Larry MCCRARY, Spartanburg County Sheriff's Office Investigator Kurt Jacobsen knows that "Butch" is a known nickname for MCCRARY. Furthermore, MCCRARY's criminal history lists "Butch MCCRARY" as an alias for Larry MCCRARY.

14. On May 10, 2022, investigators from the Spartanburg County Sheriff's Office conducted a neighborhood canvass of Gilliam Rd in Greer, South Carolina, in reference to a missing person investigation. Investigators noted surveillance cameras on the residence of the **TARGET LOCATION**. Investigators knocked on the door, but received no answer. At

6

4:37 PM, Spartanburg County Investigator Kyle received a phone call and voicemail from telephone number 864-559-1958 (TT#31). The male voice on the voicemail identified himself as Larry MCCRARY. On May 11, 2022, at 9:01 AM, Investigator Kyle returned the phone call to TT#31. Investigator Kyle spoke with a male who again identified himself as Larry MCCRARY. MCCRARY said that his surveillance cameras only keep recordings for a 24-hour period before being overwritten.

15. On May 10, 2022, agents intercepted a phone call between FREEMAN, using TT#1, and 864-559-1958 (TT#31), used by Larry MCCRARY. A relevant portion of the call went as follows:

    FREEMAN: "You know 'Red' don't you?"

    MCCRARY: "Red?"

    FREEMAN: "Red Glenn?"

    MCCRARY: "Yeah."

    FREEMAN: "She got some OxyContin she want to sell that the doctor gave her."

    MCCRARY: "Hell, I done bought some. I got a hundred of them."

    FREEMAN: "Ok then."

    MCCRARY: "How much she want for hers?

    FREEMAN: "I don't know, I didn't even ask her. She just told me she had some. Yesterday, Alvin got some Loratabs from her."

    MCCRARY: "Oh, ok."

    FREEMAN: "She done got off Loratabs, and the doctor put her on OxyContin."

    MCCRARY: "Oh, ok. Yeah, I just got a damn hundred of them. Sure did."

7

FREEMAN: "She said the doctor put her on OxyContin. I'm gonna go over there. She said that doctor there would write me a script too, put me back on them."

MCCRARY: "He will?"

FREEMAN: "That's what she said. She told me to go over there. Said I been told you to go over there."

MCCRARY: "Ah, over there in Greenville?"

FREEMAN: "Yeah."

MCCRARY: "Oh shit, where it at?"

FREEMAN: "Over there by her house somewhere."

MCCRARY: "Ah."

FREEMAN: "You know where it is?"

MCCRARY: "Naw, I don't know where it is. Hell, I need to get in too because they took me at [mine] off of them. I told you they found some damn cocaine in my system."

FREEMAN: "How? Them damn pills."

MCCRARY: "Yeah."

FREEMAN: "Them pills wasn't real."

MCCRARY: "Huh?"

FREEMAN: "Them pills wasn't real. Them n****s put all that shit in them."

MCCRARY: "Naw, that ain't what it was. It was from me damn baggin' the stuff up."

FREEMAN: "Oh yeah, yeah, yeah. That's probably what it was. Yeah."

MCCRARY: "Yeah, it was from me baggin' the stuff up. Hell, I was gettin' them."

8

FREEMAN: "Huh?"

MCCRARY: "The doctor was giving me the damn pills."

FREEMAN: "He took you off 'cause they found cocaine?"

MCCRARY: "Huh?"

FREEMAN: "They took you off 'cause they found cocaine in there?"

MCCRARY: "Hell yeah. Yeah, they found cocaine in my system. Sure did."

FREEMAN: "How long he say you gotta stay off?"

MCCRARY: "Hell, he ain't gonna give them back. Ain't gonna give them back. Hear me?"

16. Based on my training, experience, and the investigation to date, I believe FREEMAN told MCCRARY he knew someone who was illegally selling hydrocodone ("She got some OxyContin she want to sell that the doctor gave her."). McCRARY stated he had just purchased 100 units of diverted prescription tablets ("I done bought some. I got a hundred of them."). McCRARY said he had previously received a legitimate prescription for hydrocodone ("The doctor was giving me the damn pills.") but stopped receiving the prescription due to a positive drug test for cocaine ("they found some damn cocaine in my system"). McCRARY said that he tested positive for cocaine due to packaging cocaine ("Yeah, it was from me baggin' the stuff up."). From training and experience, I know that it is common for drug traffickers to purchase bulk quantity of drugs and then break the bulk amount into smaller amounts for redistribution. Additionally, I believe MCCRARY admitted to personally consuming prescription tablets.

9

17. On May 21, 2022, at approximately 9:56 AM, agents intercepted a phone call between FREEMAN, using TT#1, and MCCRARY, using TT#31. A relevant portion of the call went as follows:

    MCCRARY: "What are you up to?"

    FREEMAN: "Nothing. Something is wrong with my damn phone, it ain't showing the numbers."

    MCCRARY: "Oh, it ain't?"

    FREEMAN: "It ain't showing when somebody is dialing. I don't know what the hell."

    MCCRARY: "When I get back to the house, I'm a need one of them things."

    FREEMAN: "Who, what? Uh, who?"

    MCCRARY: "A girl."

    FREEMAN: "Where you at now?"

    MCCRARY: "I'm over at Sam's."

    FREEMAN: "Oh, okay. I'll hit down that way in a minute."

    MCCRARY: "Aight."

    FREEMAN: "How long you gonna be gone, bud?"

    MCCRARY: "Probably about 20 minutes."

18. Based on my training, experience, and the investigation to date, I believe MCCRARY asked FREEMAN for a unit of drugs ("When I get back to the house, I'm a need one of them things"). FREEMAN asked what type of drug MCCRARY wanted ("Who, what? Uh, who?"). MCCRARY confirmed he wanted cocaine ("A girl"). I know "girl" to be code for

10

cocaine. MCCRARY said he could conduct the drug transaction in 20 minutes ("Probably about 20 minutes").

19. Later that day at approximately 3:15 PM, agents intercepted a conversation agents intercepted a phone call between FREEMAN, using TT#1, and MCCRARY, using TT#31. A relevant portion of the call went as follows:

> MCCRARY: "Okay I will. I'm coming to see you tomorrow. I'll come see you tomorrow."
>
> FREEMAN: "Okay then."
>
> MCCRARY: "Okay, I'll talk to you in a little bit."

20. Based on my training, experience, and investigation to date, I believe MCCRARY told FREEMAN he would meet him on May 22, 2022, to conduct a previously discussed drug transaction ("I'm coming to see you tomorrow.").

21. On May 22, 2022, at approximately 3:11 PM, agents intercepted an outgoing call from FREEMAN on TT#1 to a female named Felicia OLIVER,[1] at phone number 864-525-8625. During the call, agents could hear FREEMAN talking with an unidentified male (UM) in the background, believed to be MCCRARY. A relevant portion of call went as follows:

> FREEMAN: "Huh?"
>
> UM: "You ready?"
>
> FREEMAN: "Yeah."
>
> UM: "Where we going? Dots?"

---

[1] Based on the investigation to date, agents believe OLIVER is FREEMAN's friend and possibly in a romantic relationship with him.

11

>FREEMAN: "My house. Over to Dot's house for the 'O,' for the, Dot's for the, and then the other seven grams over at my house."
>
>UM: "Ok."
>
>FREEMAN: "Alright."
>
>UM: [Unintelligible.]
>
>FREEMAN: "Dot's house."

22. At approximately 3:38 PM, Spartanburg County Investigator Jacobsen observed a white Dodge Ram pickup truck in the driveway of 414 King St, Greer, South Carolina (FREEMAN's secondary residence), bearing South Carolina license plate number MWP279, which is registered to Larry MCCRAY, a known alias for MCCRARY. The Dodge truck was parked beside a black Chevrolet Impala, which is a vehicle frequently driven by FREEMAN. Geo-location data relative to TT#1 at this time also placed TT#1 in the vicinity of King Street.

23. At approximately 4:20 PM, Spartanburg County Investigator Jacobsen then observed the white Dodge truck registered to MCCRAY and FREEMAN's impala parked at 103 Finley Avenue, Greer, South Carolina (FREEMAN's main residence), with the garage door open. Spartanburg County Investigator Jacobsen positively identified FREEMAN and MCCRARY standing outside the residence.

24. At approximately 4:23 PM, Spartanburg County Investigator Jacobsen observed MCCRARY enter the driver seat of the Dodge truck and leave 103 Finley Avenue.

25. Based on my training, experience, the investigation to date, and the intercepted calls between FREEMAN and MCCRARY on May 21, 2022, and surveillance of FREEMAN and MCCRARY on May 22, 2022, I believe MCCRARY purchased cocaine from

FREEMAN while at 414 King Street, Greer, South Carolina, and then traveled to 103 Finley Avenue, Greer, South Carolina, FREEMAN's main residence, and received additional drugs.

### May 31, 2022 Search Warrant

26. On May 27, 2022, the Honorable Kevin F. McDonald, United States Magistrate Judge for the District of South Carolina, authorized the search of the **TARGET LOCATION** for books, papers, records, receipts, ledgers, and other financial and business-related documents.

27. On May 31, 2022, Your Affiant (Special Agent Tonya G. Kelley) and other law enforcement officers executed the search warrant. During the execution of the search warrant, officers located a quantity of suspected cocaine and suspected heroin in the master bedroom. Law enforcement made entry into the residence at the **TARGET LOCATION** at approximately 6:43 AM on May 31, 2022, and immediately secured the scene. There were no persons on scene, but the residence was furnished indicating that someone lived or could live at the **TARGET LOCATION**. In a dresser or chest of drawers located to the left of the bed in the master bedroom, officers located a red bag. Officers were searching the chest of drawers for records and documents as authorized in the May 27, 2022 search warrant. Through my training and experience, I know that drug dealers and money launderers often keep records of their illegal activity in their bedrooms and bedroom furniture, so that it is concealed but still easily accessible. Inside of the red bag, officers located a quantity of suspected cocaine and suspected heroin. The suspected cocaine was prepackaged into several distributable quantities.

28. As a result of this discovery of suspected cocaine and suspected heroin, Your Affiant is requesting additional authorization to perform a complete search of the **TARGET LOCATION** as set forth and described in Attachment A, which would allow the seizure of suspected controlled substances along with other evidence, fruits, and instrumentalities of violations of federal law as set forth in Attachment B.



14



## CONCLUSION

29. Based on the foregoing, Your Affiant respectfully submits that there is probable cause to believe that the **TARGET LOCATION** presently contains evidence of the crimes under investigation in the form of suspected narcotics. To date, facts and evidence obtained throughout the investigation indicate that MCCRARY and FREEMAN distribute drugs and conspire with one another to do so. The **TARGET LOCATION** has been identified as MCCRARY's residence and suspected narcotics have been discovered by law enforcement while conducting a court-authorized search for documents and records.

30. I know that individuals involved in drug trafficking frequently maintain proceeds or records of their activities in secure yet convenient locations such as their homes, garages, storage buildings, automobiles, safes, and curtilage of their property. For these reasons as well as the evidence described above, I respectfully submit that there is probable cause to search the **TARGET LOCATION** and seize the evidence described in Attachment B.

Respectfully submitted,

*s/ Tonya G. Kelley*
Tonya G. Kelley
Special Agent, DEA

SWORN TO ME VIA TELEPHONE
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE

This __31__ day of May, 2022
Greenville, South Carolina

The Honorable Kevin F. McDonald
United States Magistrate Judge
District of South Carolina

16

## ATTACHMENT A

### TARGET LOCATION

The **TARGET LOCATION** is a property located at 867 Gilliam Road, Greer, SC 29651. The residence to be searched is a single-family dwelling with vinyl siding. The siding on the front porch is light in color. The shutters on the windows are dark red/maroon. The front porch has white columns. The foundation of the residence is dark red/maroon. The residence has a metal chain link fence around the property. The driveway is on the right side of the residence. On the left side of the driveway is a black mailbox. On the right side of the mailbox are the numbers "867." On the right side of the driveway is a metal stand-alone open garage. The **TARGET LOCATION** and authorized locations to search also include any vehicles located at or on the property.



17

# ATTACHMENT B

## Things to be Seized

The items to be seized from **TARGET LOCATIONS** include the following:

All information and objects that constitute fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. §841(a)(1) (PWID controlled substances) and 21 U.S.C. §846 (conspiracy to PWID controlled substances), involving MCCRARY and/or co-conspirators in the subject offenses, known and unknown, including the following:

1. Suspected controlled substances;

2. Receipts, notes, ledgers, tally sheets, and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances;

3. Items which evidence the identity of the person(s) occupying, possessing, residing in, owning, frequenting, or controlling the premises or property to be searched, including, but not limited to: keys; rental agreements and records; property acquisition records; utility bills, telephone bills, and other receipts; photographs; storage records; vehicle records; canceled mail envelopes and correspondence; personal and travel identification documents; financial documents such as tax returns, bank records, safe deposit box records, canceled checks; and other records of income and expenditure, such as credit card and bank records;

4. Items which evidence the intent to distribute controlled substances, such as packaging materials, scales, cutting agents, and any illegal controlled substances;

5. Cellular phones, computers, or other personal communication devices and data-storage devices, to the extent agents have reason to believe such devices belong to Larry MCCRARY;

6. Significant amounts of currency and other evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in illegal narcotics activities;

7. Any firearms and weapons which are kept for the protection of illegal controlled substances or proceeds; and

8. Safes, combination or key-lock strong boxes or other secure storage containers, suitcases, storage lockers, safety deposit boxes, locked cabinets and other types of locked or closed containers, and hidden compartments that may contain any of the foregoing.